655 F.2d 29
 1981-2 Trade Cases 64,232
 INTERSTATE CIGAR CO., INC., L.S. Amster & Co., Inc., and
Ladrew Distributors, Inc., Plaintiffs-Appellants,
v.
STERLING DRUG INC., Breon Laboratories Inc., Winthrop
Laboratories, Lehn& Fink, "John Doe No. 1," "John Doe No.
2," and "John Doe No. 3," names of last three defendants
being fictitious, true names of persons intended being
unknown, Defendants-Appellees.
 Nos. 829, 909, Dockets 80-7631, 80-7633.
 United States Court of Appeals,
Second Circuit.
 Argued May 28, 1981.
Decided July 21, 1981.
 
 Noel W. Hauser, P.C., New York City, for plaintiffs-appellants.
 Frederick A. Nicoll, New York City (James B. Swire, David S. Robbins, Rogers Hoge & Hills, New York City, of counsel), for defendants-appellees.
 Before FEINBERG, Chief Judge, and LUMBARD and MANSFIELD, Circuit Judges.
 MANSFIELD, Circuit Judge:
 
 
 1
 Plaintiffs, distributors of over-the-counter medicine and health products, appeal from a judgment of the Southern District of New York entered by Judge Constance Baker Motley after a non-jury trial dismissing their damages claim based on the allegation that defendant drug manufacturers had engaged in price discrimination in violation of the Robinson-Patman Act, 15 U.S.C. § 13(a), by selling Haley's M-O ("M-O"), a drug product, to competing distributors at a 25% discount not given to plaintiffs, and awarding defendants $262,661.51 plus interest on their counterclaims for the price of M-O sold and delivered to plaintiffs. Plaintiffs also appeal from a judgment of the same court, entered after a jury verdict awarding them $75,000 damages for breach of an agreement by defendants to accept return of purchased M-O, granting defendants' post-trial motion for judgment notwithstanding the verdict and dismissing plaintiffs' breach of contract claim. Lastly, plaintiffs appeal two orders granting defendants reasonable attorneys' fees and costs in the sum of $1,000 based on plaintiffs' bad faith opposition to a reasonable protective order and interposition of a frivolous motion. We affirm the judgments and orders.
 
 
 2
 In March, 1977, plaintiffs bought various sizes of M-O from Glenbrook Laboratories Division of defendant Sterling Drug Inc. Beginning on April 1, 1977, Sterling, through its subsidiary Breon Laboratories, Inc., began marketing M-O at a 25% discount to customers which had not previously purchased or stocked M-O in any of its sizes within the preceding year. Between May and December, 1977, plaintiffs bought large quantities of M-O from defendants but did not receive the new customer 25% discount. Upon learning of this discount plaintiffs demanded the same discount on their purchases, which was refused on the ground that plaintiffs, not being new distributors of M-O, were ineligible to receive the discount. Defendants, however, did agree to accept the return of plaintiffs' 16-ounce size M-O remaining in stock, which plaintiffs had purchased from them. Subsequently, however, they refused to accept return of the goods. Plaintiffs claim that defendants violated § 2(a) of the Robinson-Patman Act by granting the 25% discount to other distributors but not to plaintiffs and § 2(e) of the Act by allowing other distributors to return purchases of M-O for full refund but refusing such privilege to plaintiffs.
 
 
 3
 Plaintiffs' § 2(a) Robinson-Patman Act price discrimination claim fails for two reasons. First, they did not show that the new distributor discount would tend to lessen competition substantially or to create a monopoly in any line of commerce, which is an essential condition precedent to establishing such a claim. See FLM Collission Parts, Inc. v. Ford Motor Co., 543 F.2d 1019 (2d Cir. 1976). Indeed, the discount offered to new distributors may well have increased competition by inducing newcomers to enter the M-O distribution field. Secondly, plaintiffs failed to introduce substantial evidence showing that they were actually injured by defendants' new distributor discount policy. Plaintiffs' theory, that they were entitled to "automatic damages," has been rejected by the Supreme Court, which requires a plaintiff to make a showing of actual injury attributable to a violation of the Robinson-Patman Act. J. Truett Payne Co. v. Chrysler Motors Corp., --- U.S. ----, ----, 101 S.Ct. 1923, 1927, 68 L.Ed.2d 442 (1981). See also Enterprise Industries, Inc. v. Texas Co., 240 F.2d 457 (2d Cir.), cert. denied, 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed.2d 914 (1957). For the latter reason, the dismissal of plaintiffs' § 2(e) claim must also be affirmed. Our affirmance of the dismissal of plaintiffs' Robinson-Patman Act claims should not be construed as an approval of the other grounds stated by Judge Motley in support of the dismissal.
 
 
 4
 With respect to plaintiffs' claim for rescission of their contract for purchase of M-O the jury, in response to special interrogatories, found that plaintiffs had failed to prove their allegations of fraud and misrepresentation, which formed the basis of their rescission claim. This verdict is supported by the record. The jury also found that defendants had breached their alleged contract to accept return of M-O in stock purchased from defendants, for which plaintiffs sought damages in the form of interest upon a line of credit used to finance their retention of the unreturned M-O and storage costs. Plaintiffs' claim that this finding entitled them to an order directing defendants to accept return of the merchandise must be denied because they sought rescission only on grounds of fraud and misrepresentation, which were rejected by the jury, and did not seek specific performance, to which they would not in any event be entitled, since any injury was compensable through money damages. Plaintiffs' sole remedy was damages based on interest charges incurred by them during the period when defendants were alleged to have improperly refused to accept the return of unsold M-O. For this the jury awarded $75,000. Judge Motley granted judgment n. o. v. on the ground that plaintiffs had failed to present the jury with sufficient evidence to justify a reasonable calculation of plaintiffs' interest costs. With this disposition we agree.
 
 
 5
 It is doubtful whether plaintiffs would be entitled to recover as damages interest charges incurred by them prior to liquidation of the amount owed, see 5 Corbin on Contracts § 1046 (1964 ed.); 1 Restatement of the Law of Contracts § 337, much less interest charges actually incurred by them (in this case claimed at 16% to 20% per annum) as distinguished from the legal or statutory rate, see Avalon Construction Corp. v. Kirch Holding Co., 256 N.Y. 137, 141, 175 N.E. 651 (1931); Rachlin & Co. v. Tra-Mar, Inc., 33 A.D.2d 370, 308 N.Y.S.2d 153 (1st Dep't 1970); Lee v. Joseph E. Seagram & Sons, Inc., 592 F.2d 39 (2d Cir. 1979); N.Y.C.P.L.R. §§ 5001(a), 5004. However, we need not resolve these issues in this case. Even assuming that for breach of contract plaintiffs were entitled to recover as damages the interest charges actually incurred by them as a result of the defendants' refusal to accept the return of M-O purchased by them from defendants, plaintiffs assumed the burden of first proving the amount of their unsold M-O inventory purchased from defendants and the credit charges incurred by plaintiffs with respect to this merchandise after they tendered and defendants refused to accept it. Plaintiffs failed to meet this burden.
 
 
 6
 Plaintiffs conceded that their claim for breach of the contract for return of merchandise was limited to that portion of plaintiffs' M-O inventory which came in 16-ounce sizes. Moreover, their Vice-President, Jerrold Herman, testified that "toward the end of 1977 or the beginning of 1978" plaintiffs had made "three or four" purchases of M-O from suppliers other than defendants. In addition, plaintiffs' inventory included M-O in sizes other than the 16-ounce size. Plaintiffs nevertheless failed to offer evidence of the amounts of M-O purchased from other sources or the amounts of their unsold inventory in the 16-ounce size purchased from defendants. Under the circumstances the jury's award of $75,000 could only have amounted to sheer speculation, unsupported by record evidence. Accordingly the district court's order granting judgment for the defendants dismissing the interest claim notwithstanding the verdict is affirmed.
 
 
 7
 Since defendants proved their counterclaim for goods sold and delivered and plaintiffs failed to adduce any evidence in opposition thereto, the judgment in favor of defendants on the counterclaim for the amount of the purchases plus pre-judgment interest is affirmed.
 
 
 8
 We also affirm the district court's two sanction orders granting defendants' motions for recovery of reasonable attorneys' fees and costs in the sum of $1,000, based on plaintiffs' vexatious, bad faith conduct in opposing a reasonable protective order and in making a patently frivolous motion. See Roadway Express, Inc. v. Piper, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam); Browning Debenture Holders' Committee v. DASA Corp., 560 F.2d 1078 (2d Cir. 1977).